UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALAN DREYFUS, )<br>　　　　　Plaintiff, )<br> )<br>　　v. )<br> )<br>JAMES ROMANO, TOWN OF )<br>BERKLEY and BOARD OF HEALTH, )<br>　　　　Defendants. )<br>_____ ) | DOCKET NO.: 05 10876 WGY |

## DEFENDANTS' MEMORANDUM OF LAW IN
## SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

### STATEMENT OF FACTS[1]

This Complaint arises from the decision of the Board of Health of the Town of Berkley to require certain soil testing before approving a sewage disposal permit application submitted by the Plaintiff, Alan Dreyfus, in regard to his property located on North Main Street in Berkley. On April 18, 2003, the Plaintiff purchased an 8.76 acre parcel of land in Berkley for the purpose of constructing a log cabin where he intended to reside.  (Statement of Facts ("SOF"), ¶¶ 5-6, 20).  The property is located adjacent to a 14-acre hazardous waste site known as "Bogs Landing" where tannery and cesspool wastes had been dumped from the 1930s through the mid-1960s.  (SOF, ¶¶ 7-8).  The Plaintiff's property is located approximately one-quarter mile from the Bogs Landing site.  (SOF, ¶ 13).   Along the northern boundary of the Plaintiff's property is located a so-called "haul road," which was used to transport tannery waste from North Main Street to the Bogs Landing dumping site.  (SOF, ¶ 14).

_____

[1] Pursuant to Local Rule 56.1, the defendants have submitted the accompanying Statement of Material Fact, which is incorporated herein by reference.

A six-acre portion of the 14-acre site was identified by the Massachusetts Department of Environmental Protection ("DEP") and the federal Environmental Protection Agency ("EPA") to contain contaminants within soil samples, including chromium and dioxins.  (SOF, ¶¶ 8-11).  As Chairman of the Berkley Board of Health, Defendant Romano was keenly aware of the agencies' finding that "high levels of contaminants are present in the site soils."  (SOF, ¶ 9-12, 32).  Further, Romano was aware of findings by the Commonwealth of Massachusetts Department of Public Health that the "[h]igh levels of some contaminants [have] potential remaining to impact the groundwater, and therefore, private wells in the future."  (SOF, ¶ 11).  Between May 1998 and January 2000, the EPA conducted a removal action at the Bogs Landing site, removing approximately 16,000 cubic yards of waste and contaminated soil.  (SOF, ¶ 12).

In February, 2003, before closing on the property, the Plaintiff caused his agent to apply to the Board of Health for permission to conduct a percolation test.  (SOF, ¶ 21).  The application was approved and the percolation test was successfully completed.  (SOF, ¶ 22).  On an unidentified date during the spring of 2003, the Plaintiff applied for a well construction permit which was eventually approved.  (SOF, ¶ 23).  Subsequently, on an unidentified date after June 6, 2003, the Plaintiff applied for a permit to construct a sewage disposal system.  (SOF, ¶ 26). Prior to acting on his application for the disposal permit, the Board of Health advised the Plaintiff that the Board would require a 21E test of the soil on the property.  (SOF, ¶ 27-29).[2]

---

[2] G.L. c. 21E sets forth the legal obligations of owners, operators, and other responsible persons for investigating and addressing contamination at a site.  The primary purpose of G.L. c. 21E is "to improve the Commonwealth's capability to respond to environmental contamination and to recover response costs from persons responsible for the contamination." Guaranty-First Trust Co. v. Textron, Inc., 416 Mass. 332, 335, 622 N.E.2d 597 (1993).  Under the statute, a property owner or other responsible person may be subject to a five-phase assessment and remediation process set forth in the Massachusetts Contingency Plan ("MCP").  Phase I consists of preliminary response, actions and risk reduction measures, including a limited investigation and evaluation of the contaminated site and a remediation of sudden releases, imminent hazards, and other time-critical conditions. See 310 Code Mass. Regs. §§ 40.0400 (1995). If preliminary response actions are inadequate, the property owner or other responsible person must proceed with the subsequent phases of the assessment and remediation process described in the MCP. See 310 Code Mass. Regs. §§ 40.0800 (1995).  See Taygeta Corp. v. Varian Associates, Inc., 436 Mass. 217, 224-225 (2002).

The Board advised the Plaintiff that the reason for the testing requirement was that, "[t]his property is located on or near the site known to have had tannery waste dumped on it, [and] [t]o ensure the health of future occupants of the site, we need proof that the area is not contaminated." (SOF, ¶ 29).  In response to the Plaintiff's complaints about the requirement to complete 21E testing, the Board modified its requirement on September 11, 2003, advising the Plaintiff by letter to his attorney that a full 21E test would not be required.  Instead, the Board advised the Plaintiff that the Board would accept the results of tests conducted by a licensed professional on a designated number of test pits. (SOF, ¶ 35).  The plaintiff refused to conduct either the 21E study or the test pit studies.  (SOF, ¶ 38).

Subsequently, the Plaintiff arranged for DEP to conduct soil testing on the property at agency expense.  (SOF, ¶ 39).  DEP acknowledged that it had never tested the area of the haul road and, therefore, told the plaintiff that "they ought to come out there and test it to make sure that it was clean."  (SOF, ¶ 40).   On November 24, 2003, DEP completed its testing and found no evidence of soil contamination.  (SOF, ¶¶ 41-42).  After review of DEP's findings, the Board voted to approve the Plaintiff's disposal system construction plan on January 15, 2004.  (SOF, ¶ 43).

The crux of the Plaintiff's complaint is that the Defendant, Berkley Board of Health, through its Chairman, Defendant James Romano, withheld approval of his disposal system permit without legal cause or authority; delayed approval of his well permit; placed burdensome requirements upon him that it did not place on other residents; and required testing that was not

specifically delineated by the Board's rules and regulations or by state law.  (SOF, ¶ 44).   For the reasons to follow, the Defendants are entitled to summary judgment.

## STANDARD OF REVIEW

Summary judgment must be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Once the movant avers an absence of evidence to support the nonmoving party's case, ... the latter must adduce <u>specific facts</u> establishing the existence of at least one issue that is both <u>genuine</u> and <u>material</u>.  <u>Sheinkopf v. Stone</u>, 927 F.2d 1259, 1261 (1st Cir. 1991) (emphasis added).  "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the [fact finder] could reasonably find for the [non-moving party].  <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 252 (1986).  While a court must examine the record in the light most favorable to the opposing party, Rule 56 does not invite a court to enter the realm of surmise.  <u>Local 48 v. United Brotherhood of Carpenters</u>, 920 F.2d 1047, 1051 (1st Cir. 1990).  [W]here elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation."  <u>Smith v. Stratus Computer, Inc.</u>, 40 F.3d 11, 12 (1st Cir. 1994) (citations omitted).

## ARGUMENT

### I.    THE FEDERAL CLAIMS

**A.    The Plaintiff Has Failed to Allege a Federal Constitutional Violation**

Prior to determining questions of individual liability and immunity, a court must first decide "whether the plaintiff has asserted a violation of a constitutional right at all.  <u>Seigert v.</u>

4

Gilley, 500 U.S. 226, 232 (1991).   Under 42 U.S.C. § 1983, any person "who, under color of any

statute . . . subjects . . . any citizen of the United States . . . to the deprivation of any rights . . .

secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in

equity, or other proper proceeding for redress."   Section 1983, by itself, does not create any

substantive rights.   Rather, it provides a vehicle for the protection and vindication of rights

secured by the United States Constitution or by federal law.   Baker v. McCollan, 443 U.S. 137,

146 n.3 (1979).   Thus, in a civil rights action under Section 1983, the plaintiff must prove, by a

preponderance of the evidence, that a person acting under color of state law deprived him of a

constitutional or federally protected right.   Tatro v. Kervin, 41 F.3d 9, 14 (1st Cir. 1994).   "In

bringing a § 1983 claim, 'it is the plaintiff's burden to identify the specific constitutional right

infringed.'"   Sheppard v. Aloisi, 384 F.Supp.2d 478, 491 (D.Mass.,2005) citing Nieves v.

McSweeney, 241 F.3d 46, 53 (1st Cir.2001).

   Here, the Plaintiff has made no attempt to meet his burden of identifying the

constitutional violation at issue.   To the contrary, the Plaintiff's Complaint is a rambling 56-

paragraph document that does not set forth *any* specific causes of action.   The Complaint alleges

only that "the Plaintiff's rights pursuant to both Federal and State constitutions and statutes have

been violated."[3]   (Pl's Compl., ¶ 56).   In this case, where the Plaintiff has failed to identify the

violation of any specific right, his federal claims must be dismissed.[4]

---

[3] In response to the Defendants' request that the Plaintiff disclose the specific basis for his Complaint, the Plaintiff stated, "The Complaint was drafted with the assistance of counsel and the allegation speaks for itself."  Plaintiff's Answers to Interrogatories, Answer No. 10. (**Exhibit L**).

[4] Due to the proliferation of Section 1983 claims, stricter pleading requirements have been imposed in order to properly plead any claim requiring proof of the element of illegal intent.  "The heightened pleading standard in civil rights cases requires specific factual allegations supporting the claims of wrongful motive in the deprivation of a plaintiff's federally-protected rights. The heightened pleading standard rejects vague and conclusory allegations regarding the critical element of illegal motive."  Hernandez Carrasquillo v. Rivera Rodriguez, 281 F.Supp.2d 329, 333 (D.Puerto Rico,2003), citing Judge v. City of Lowell, 160 F.3d 67, 72-74 (1st Cir.1998); Dewey v. University of New Hampshire, 694 F.2d 1, 3 (1st Cir.1982).

**B.    No Constitutional or Federally Protected Rights Apply**

Alternatively, even should the court be inclined to speculate as to nature of the Plaintiff's claim, the Defendants are entitled to summary judgment because, even if the Plaintiff had styled his complaint to assert claims for violation of equal protection or due process rights, no constitutional or federally protected rights would apply.

**1.    No Procedural Due Process Violation**

If Plaintiff argues that the Defendants illegally departed from the state and municipally mandated procedures for approving permits, the Supreme Court has held that, in such circumstances, the failure to provide pre-deprivation processes does not violate the Due Process Clause. See Parratt v. Taylor, 451 U.S. 527, 543, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); PFZ Properties, Inc. v. Rodriguez, 928 F.2d 28, 31 (1st Cir.1991). The question would be whether post-deprivation processes were available to the Plaintiff to remedy the alleged constitutional violation. See Creative Environments v. Estabrook, 680 F.2d 822, 832 n. 9 (stating that "where a state has provided reasonable remedies to rectify a legal error by a local administrative body ... due process has been provided"), *cert denied,* 459 U.S. 989, 103 S.Ct. 345, 74 L.Ed.2d 385 (1982). See also Zinermon v. Burch, 494 U.S. 113, 126, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990) ("The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not compete unless and until the State fails to provide due process."). Here, the availability of state court remedies to address any complaints against the Defendants satisfies all

procedural due process requirements.  See Burnham v. City of Salem, Mass., 101 F.Supp.2d 26, 33-34 (D. Mass. 2000).

### 2.      No Substantive Due Process Violation

The substantive component of due process protects against "certain government actions regardless of the fairness of the procedures used to implement them." Brown v. Hot, Sexy and Safer Productions, Inc., 68 F.3d 525, 531 (1st Cir.) cert. den'd, 516 U.S. 1159 (1996) (citations omitted).  A plaintiff can assert a substantive due process claim by alleging either "a deprivation of an identified liberty or property interest protected by the Fourteenth Amendment," or if no specific liberty or property interest is identified, that the state actor's conduct "shocks the conscience."  Id. at 531. In the latter situation, "the constitutional line [is] crossed" only when some basic and fundamental principal has been transgressed.  Amsden v. Moran, 904 F.2d 748, 754 (1st Cir. 1990) cert. denied, 498 U.S. 1041 (1991).  In the First Circuit, before an infringement of constitutional proportions occurs, "state action must in and of itself be egregiously unacceptable, outrageous, or conscience-shocking."  Id at 754 (emphasis in original).

The First Circuit case law regarding municipal denials of permits, although concerned mainly with building and zoning decisions, creates an insurmountable hurdle for Plaintiff's substantive due process claim.  The First Circuit "has repeatedly held ... that rejections of development projects and refusals to issue building permits do not ordinarily implicate substantive due process." Licari v. Ferruzzi, 22 F.3d 344, 349 (1st Cir. 1994), (quoting PFZ Properties, Inc. v. Rodriguez, 928 F.2d 28, 31 (1st Cir.), cert. dismissed, 112 S. Ct. 1151 (1991)) (emphasis added).  This Circuit's cases "make clear that a regulatory board does not transgress constitutional due process requirements merely by making decisions 'for erroneous reasons' or by making 'demands which arguably exceed its authority under the relevant state statutes.'" Licari,

22 F.3d at 350 (quoting <u>Amsden</u>, 904 F.2d at 757).  While the First Circuit has "left the door slightly ajar for federal relief...in truly horrendous situations..., the threshold for establishing the requisite 'abuse of government power' is a high one indeed."  <u>Licari</u>, 22 F.3d at 350 (quoting <u>Nestor Colon Medina and Sucesores, Inc. v. Custodio</u>, 964 F.2d 32, 45 (1st Cir. 1992)).  The First Circuit has gone so far as to state "[i]t is <u>bedrock law</u> in this circuit, however, that violations of state law--even where arbitrary, capricious, or undertaken in bad faith--do not, without more, give rise to a denial of substantive due process under the U.S. Constitution."  <u>Coyne v. City of Somerville</u>, 972 F.2d 440, 444 (1st Cir. 1992) (emphasis added).

Furthermore, any delay suffered by the Plaintiff arising from the Defendants' decisions does not create a constitutional violation.  In <u>Chiplin Enters. v. City of Lebanon</u>, 712 F.2d 1524, 1526-28 (1st Cir.1983), the Court held that a building developer who had to wait five years between the denial of a building permit and the determination that the permit had been improperly denied, could not state a Section 1983 claim for deprivation of either substantive or procedural due process. Taking all facts alleged as true, even though the plaintiff "had met all legal requirements for the permit" and "the town had no valid reason to reject the application" and that defendants "maliciously den [ied] [plaintiff] a building permit for invalid and illegal reasons and in bad faith," the Court held that the plaintiff could not state a valid Section 1983 claim. <u>Id.</u> at 1526. Even though the conduct complained of was carried out under the color of state law, the plaintiff could not "identify a constitutional right of which [he] ha[d] been denied." <u>Id.</u> at 1527. This is because "property is not denied without due process simply because a local planning board rejects a proposed development for erroneous reasons or makes demands which arguably exceed its authority under the relevant state statutes." <u>Creative Env'ts, Inc. v. Estabrook</u>, 680 F.2d 822, 832 n. 9 (1st Cir.1981).  See <u>Diva's Inc. v. City of Bangor</u>, 411 F.3d 30, 43 (1st

Cir. 2005).  Based upon these settled principles, the Plaintiff cannot sustain a claim for violation

of due process rights.

### 3.    No Equal Protection Violation

Likewise, the Plaintiff also cannot show that Defendants violated any rights guaranteed

under the equal protection clause.  Under the Fourteenth Amendment's equal protection clause,

"absent a classification interfering with the exercise of a fundamental right or operating to the

peculiar disadvantage of a suspect class, a state's conduct need only bear a reasonable

relationship to some proper object."  Bauza v. Morales Carrion, 578 F.2d 447, 450 (1st

Cir.1978)(citations omitted).  In the present case, the Plaintiff does not assert he is a member of a

suspect class, nor does he claim that he has a fundamental right to a disposal system permit.  See

e.g., Massachusetts Bd. of Retirement v. Murgia, 427 U.S. 307 (1976) (defining a "suspect

class"); Roslindale Motors Sales, Inc. v. Police Comm'r of Boston, 405 Mass. 79, 82, 538 N.E.2d

312, 314 (1989) (holding no claim of entitlement to license).  Therefore, the Plaintiff's claim

must be viewed under "the rational basis standard" where Courts "must give considerable

deference to legislative policy determinations and refrain from setting aside a statutory

discrimination if 'any state of facts reasonably may be conceived to justify it.'"  Abdulah v.

Commissioner of Ins. of Com. of Mass., 907 F.Supp. 13, 16 (D.Mass. 1995) (citations omitted).

As discussed above, the First Circuit has failed to recognize a substantive due process

violation for a municipality's denial of a permit.  Likewise, the First Circuit has been equally

unforgiving of such claims brought under the equal protection clause.  "It is not enough simply to

give these state law claims constitutional labels such as 'due process' or 'equal protection' in order

to raise a substantial federal question under section 1983."  Creative Environments Inc. v.

Estabrook, 680 F.2d 822, 833 (1st Cir. 1982).  For example, the First Circuit found that reference

9

by a plaintiff, aggrieved of the denial of a building permit, to the equal protection clause "only relabels the claim:  it has been deprived of the equal protection of the laws only to the extent that it has been deprived of its property without due process." Chiplin Enterprises, Inc. v. City of Lebanon, 712 F.2d 1524, 1528 (1st Cir. 1983).  Indeed, the First Circuit has expressly counseled against Equal Protection review of local permitting decisions:  "There is an obvious danger to opening up local permitting decisions to detailed federal judicial scrutiny under equal protection rubric.  If disgruntled permit applicants could create constitutional claims merely by alleging that they were treated differently from a similarly situated applicant, the correctness of virtually any state permit denial would become subject to litigation in federal court.  Limiting such claims is essential to prevent federal courts from turning into 'zoning board[s] of appeals.'" Nester Colon, supra at 44-45 (citations omitted).

In the present case, Plaintiff's claim essentially is that, by requiring soil tests, the Board departed from its own procedures or those provided by local or state law.  However, the Plaintiff alleges no facts that would suggest "the type of egregious procedural irregularities or abuse of power mentioned by Creative Environments as conceivably rising to the level of a federal equal protection violation."  See PFZ Properties, Inc. v. Rodriguez, 928 F.2d 28, 32 (1st Cir. 1991).

**a.    The Defendants' Conduct Had a Rational Basis:**

Under the exceptionally deferential rational basis test, the governmental Defendant's "conduct need only bear a reasonable relationship to some proper object." Bauza v. Morales Carrion, 578 F.2d 447, 450 (1st Cir.1978).  In the present case, the Defendants' imposition of a testing requirement was rationally related to the location of the plaintiff's property in close proximity to a contaminated DEP clean-up site; the Board' s knowledge of a history of

contamination at the adjacent site, and the Board's obligation, under the circumstances, to take appropriate action to protect public health.

 **b.**  <u>No "Similarly Situated" Homeowners Treated Differently</u>:

To establish an Equal Protection claim, Plaintiff must prove both that he "has been intentionally treated differently from others similarly situated <u>and</u> that there is no rational basis for the difference in treatment." <u>Village of Willowbrook</u>, <u>supra</u>, 120 S. Ct. at 1074 (emphasis added). Because the Defendant's conduct in the present case had a rational basis, the court need not go any further. Should the Court inquire, however, there is no evidence that similarly situated homeowners were treated differently. "The determination as to whether individuals are 'similarly situated' for equal protection purposes is an amorphous one." <u>Tapalian v. Tusino</u>, 377 F.3d 1, 6 (1st Cir. 2004). "The test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated. ... [T]he 'relevant aspects' are those factual elements which determine whether reasoned analogy supports, or demands, a like result. ... In other words, apples should be compared to apples.'" <u>Barrington Cove Ltd. P'ship v. R.I. Hous. and Mortgage Fin. Corp.</u>, 246 F.3d 1, 8 (1st Cir. 2001).

In the present case, there is simply no evidence that Plaintiff was treated differently than similarly situated homeowners. It is not enough for the Plaintiff to argue that the Defendants did not require all other permit applicants in Berkley to test their soil. Rather, for purpose of equal protection analysis, the proper comparative group consists of only those homeowners who applied for permits on property located in the same proximity from the Bogs Landing site. Further, as the Plaintiff acknowledges, the old "haul road" along which contaminants were transported from the street to the dumping site actually runs along the northern perimeter of his property, which is an additional distinguishing factor about the Plaintiff's property that must be

11

considered in assessing whether another property is "similarly situated."  Finally, should the

Plaintiff argue that subsequent applicants have not been subjected to the same testing

requirement, such an argument ignores the fact that, following the DEP evaluation of the

Plaintiff's property, the Board had reassurance that no contamination existed.  Therefore, it

would be rational for the Board to approve subsequent applications in the same general area

without additional testing.

Finally, even if the Plaintiff could prove there are other similarly situated homeowners,

the First Circuit requires "proof that (1) the person, compared with others similarly situated, was

selectively treated; and (2) that such selective treatment was based on impermissible

considerations."  Rubinovitz v. Rogato, 60 F.3d 906, 909-910 (1st Cir. 1995) (citations omitted).

The Supreme Court articulated that "[t]he unlawful administration by state officers of a state

statute fair on its face, resulting in its unequal application to those who are entitled to be treated

alike, is not a denial of equal protection unless there is shown to be present in it an element of

intentional or purposeful discrimination."  Snowden v. Hughes, 321 U.S. 1, 8 (1944).  Here, other

than pure innuendo and speculation, the Plaintiff can demonstrate no such evidence of purposeful

discrimination for unlawful reasons.

    **c.**    **No Evidence of Improper Motive**:

Although the Supreme Court did not reach the issue in Village of Willowbrook, the First

Circuit has recognized that an Equal Protection claim may lie where plaintiff can prove that he

was treated differently than others similarly situated, and that such disparate treatment "was

based on  ... malicious or bad faith intent to injure a person."  Rubinovitz v. Rogato, 60 F.3d 906,

909-910 (1st Cir. 1995).  The First Circuit in Rubinovitz noted two limitations to such claims:

"First, bad-faith or malicious-intent-to-injure cases are infrequent ... [and] [s]econd, the

12

malice/bad faith standard should be scrupulously met. Id.  Later, the First Circuit clarified that in Rubinovitz, plaintiff had adduced only barely enough evidence'" even though "there was not the slightest vestige of any legitimate government purpose served" by Defendant's conduct.  Baker v. Coxe, 230 F.3d 470, 474 (1st Cir. 2000).  Thus Rubinovitz "illustrates the extreme 'malicious orchestrated campaign' needed to surmount the constitutional threshold."[5] Id. (emphasis added). The Plaintiff must also "present a motive to explain why the [Defendant] officials would treat them arbitrarily or irrationally."  Donovan v. Haverhill, 311 F.3d 74, 77 (1st Cir. 2002).

In the present case there was no "extreme malicious orchestrated campaign" by Romano or other Board members.  As discussed above there was a rational basis for requiring the soil testing: the proximity of the property to a known hazardous waste site.  Moreover, the decision to require testing was not made unilaterally by Mr. Romano; rather, it was mandated by the entire elected Board of Health.  Further, the Board did not simply deny the Plaintiff's application for a permit.  To the contrary, the Board informed the Plaintiff that the permit would be allowed upon the presentment of tests showing no contamination.  Accordingly, once the testing was accomplished, showing no evidence of contamination, the Board approved the Plaintiff's application.  Finally, even if the Plaintiff had alleged any "facts" to support his innuendo that Romano had an improper purpose for denying the permit, the First Circuit has refused the invitation to expand "equal protection" analysis to include claims for wrongful denial of permits based upon political retaliation.  Nestor Colon, supra 964 F.2d at 44.  Upon application of these

---

[5]  The only First Circuit decision since Rubinovitz to endorse a claim based upon the "malicious intent to injure" theory was a recent case where the Town Director of Public Works set onerous conditions upon Plaintiff's road construction after Plaintiff refused the Director's demand for "a forty-foot boat and two girls," and another D.P.W. employee testified the Director was "deliberately busting [Plaintiff's] balls."  See Tapalian v. Tusino, 377 F.3d 1, 7 (1st Cir. 2004).  None of the allegations in the present case fall anywhere near the Tapalian circumstances.

legal principles to the facts of this case, the Plaintiff cannot prevail in any claim premised upon

equal protection grounds.  Accordingly, all federal causes of action must be dismissed.

## C.    ROMANO IS PROTECTED FROM § 1983 LIABILITY UNDER THE DOCTRINE OF QUALIFIED IMMUNITY[6]

Even if the Plaintiff could demonstrate an underlying civil rights violation, Defendant

Romano is entitled to qualified immunity.  Under federal law, "government officials performing

discretionary functions, generally are shielded from liability for civil damages insofar as their

conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

"Qualified immunity, which is a question of law, is an issue that is appropriately decided by the

court during the early stages of the proceedings and should not be decided by the jury."  Tatro v.

Kervin, 41 F.3d 9, 15 (1st Cir. 1994).  The standard for judging a motion for summary judgment

brought by a government official seeking qualified immunity is "whether a reasonable official

could have believed his actions were lawful in light of clearly established law."  Febus-

Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 91 (1st Cir. 1994).  The focus should be not on the

merits of the plaintiff's underlying claim, but instead on the objective legal reasonableness of the

official's conduct as measured by reference to clearly established law and the information the

official possessed at the time of the allegedly unlawful conduct.  Lowinger v. Broderick, 50 F.3d

61, 65 (1st Cir. 1995).  Furthermore, "a defense of qualified immunity may not be rebutted by

evidence that the defendant's conduct was malicious or otherwise improperly motivated.

Evidence concerning the defendant's subjective intent is simply irrelevant to that defense."

---

[6] The entitlement to qualified immunity should be resolved, whenever possible, before trial, see Roy v. City of Lewiston, 42 F.3d 691, 694 (1st Cir. 1994) (citing Hunter, 502 U.S. 224), because it is "an entitlement not to stand trial or face the other burdens of litigation."  Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).  "The privilege is 'an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.'"  Saucier v. Katz, 533 U.S. 194, 200-01 (2001) (quoting Mitchell, 472 U.S. at 526).

Crawford-El v. Britton, 523 U.S. 574, 118 S.Ct. 1584, 1592 (1998) (emphasis added).  The qualified immunity standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law."  Lowinger at 65.  The doctrine anticipates and accommodates "reasonable error ... because officials should not err always on the side of caution" for fear of being sued.  Hunter v. Bryant, 502 U.S. 224, 229 (1991).

The Supreme Court has set up a sequential analysis for determining whether a defendant violated clearly established rights of which a reasonable person would have known.  See Saucier v. Katz, 533 U.S. 194, 201-06 (2001). The First Circuit has construed that framework to consist of three inquiries: "(i) whether the plaintiff's allegations, if true, establish a constitutional violation; (ii) whether the constitutional right at issue was clearly established at the time of the putative violation; and (iii) whether a reasonable officer, situated similarly to the defendant, would have understood the challenged act or omission to contravene the discerned constitutional right."  Limone v. Condon, 372 F.3d 39, 44 (1st Cir.2004).

Applying this analysis, first, as argued above, the Plaintiff has failed to establish a constitutional violation.  Second, the Plaintiff's right to a disposal permit, especially under the circumstances presented here, was not clearly established.  Finally, even if the first two inquiries were answered affirmatively, neither the Court of Appeals for the First Circuit nor the United States Supreme Court has resolved a case sufficiently similar to this one to provide clear notice to Romano that his vote to deny the Plaintiff's permit application pending soil tests amounted to a denial of the Plaintiff's constitutional rights.  Therefore, where Romano's conduct was objectively reasonable, he is entitled to the protection of qualified immunity.

**D.    THE TOWN IS NOT VICARIOUSLY LIABLE FOR ITS EMPLOYEE'S CONDUCT UNDER SECTION 1983**

Even if the plaintiff somehow could show that Romano's actions constituted a violation of § 1983, it is well established that the Town cannot be held vicariously liable for a municipal official's conduct on the basis of either vicarious liability or respondeat superior.   City of Canton, Ohio v. Harris, 489 U.S. 378, 385, 109 S.Ct. 1197, 1202, 103 L.Ed.2d 412 (1989); Monell v. Department of Social Services of City of N.Y., 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978).  Rather, the Town may be liable to the plaintiff under § 1983 only if the Plaintiff establishes that Romano's alleged unlawful conduct toward him resulted from the Town's adoption or condonation of a custom or policy constituting a "deliberate indifference" to citizens' constitutional rights.  Monell v. Dep't of Social Services, 436 U.S. 658, 694 (1978); Meehan v. Town of Plymouth, 167 F.3d 85, 92 (1st Cir. 1999); Bordanaro v. McLeod, 871 F.2d 1151, 1156 (1st Cir. 1989).  To establish a claim against a municipality on the basis of custom, a Plaintiff must prove a practice so "permanent and well settled as to constitute a 'custom or usage' with the force of law." Monell, 436 U.S. at 691, 98 S.Ct. at 2036; quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).  Only when the implementation of the municipality's policy or custom is a cause of the injury may the municipality be liable under § 1983. Canton, 489 U.S. at 385, 109 S.Ct. at 1202.  A Plaintiff must show "a direct link between the municipality's policy and the constitutional violation." Bowen, 966 F.2d at 18.  See generally Armstrong v. Lamy, 938 F.Supp. 1018, 1035  (D.Mass., 1996).

The Plaintiff has not alleged the existence of any custom or policy by the Town constituting deliberate indifference to his rights.  Therefore, all claims against the Town must be dismissed.

## II.     THE STATE LAW CLAIMS

"In a federal-question case, the termination of the foundational federal claim does not divest the district court of power to exercise supplemental jurisdiction but, rather, sets the stage for an exercise of the court's informed discretion."  Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 256-57 (1st Cir.1996). 28 U.S.C. § 1367(c)(3).  In deciding whether to retain jurisdiction over lingering state-law claims, the court must take into account "concerns of comity, judicial economy, convenience, fairness, and the like." *Roche v. John Hancock Mutual Life Insurance Company,* 81 F.3d 249, 257 (1st Cir.1996); Armstrong v. Lamy, 938 F.Supp. 1018, 1037 (D.Mass.,1996).  A federal court may retain jurisdiction over state-law claims "notwithstanding the early demise of all foundational federal claims." *Rodriguez v. Doral Mortgage Corp.,* 57 F.3d 1168, 1177 (1st Cir.1995).  Should this Court exercise its discretion, which the Defendant respectfully requests it do, the Defendants are entitled to summary judgment as to the state law claims for the following reasons.

## A.     THERE HAS BEEN NO VIOLATION OF THE MASSACHUSETTS CIVIL RIGHTS ACT

The Plaintiffs' Equal Protection claim fares no better under Massachusetts law than under federal law.  The Massachusetts Supreme Judicial Court has stated it "shall also interpret our equal protection guarantee as identical to Federal equal protection guarantee." McNeil v. Comm'r of Corr., 417 Mass. 818, 826, 633 N.E.2d 399, 404 (1994).  The federal law analysis set forth above thus holds true under state law.

Moreover, the Massachusetts Civil Rights Act ("MCRA") is "explicitly limited ... to situations where the derogation of secured rights occurs by threats, intimidation or coercion," almost always arising in the context of a of physical confrontation.  Chilson v. Polo Ralph Lauren Retail Corp., 11 F.Supp.2d 153, 158-59 (D.Mass. 1998).  In the present case there is

17

simply no evidence of the requisite threats, intimidation or coercion.  Under an objective analysis, the alleged delay or denial of permit applications is not a threatening, intimidating or coercive activity contemplated by the MCRA.

**B.    THE MUNICIPAL DEFENDANTS ARE IMMUNE FROM LIABILITY UNDER G.L. c. 258.**

A municipality is immune to actions of negligence except as Section 2 of G.L. c. 258, the Massachusetts Tort Claims Act ("MTCA"), has abrogated that immunity.  Section 2 imposes liability on a public employer for the negligence of any public employee acting within the scope of his employment, provided that none of the "exclusions" contained in G.L. c. 258, § 10, are applicable.  The Town submits that it is immune from liability under the public duty exceptions to the MTCA, codified at G.L.c. 258, § 10(b) and (e).

**1.    The Town is immune from liability under Section 10(b) because the Board's decision to require soil testing was a discretionary function.**

Chapter 258, Section 10(b), exempts from liability all claims that are "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a public employer or public employee, acting within the scope of his office or employment, whether or not the discretion is abused."  G.L. c. 258, § 10(b).

The policy behind the exception is to avoid allowing tort actions to be used as a "monkey wrench" in the machinery of government decision making.  Beins v. United States, 695 F.2d at 600.  If the public employee is required to decide and act without fixed or readily ascertainable standards to fall back upon, that act is a discretionary function. Barton v. United States, 609 F.2d 977, 979 (10th Cir.1979). That the discretion conferred may have been abused is of no matter. Wightman v. Town of Methuen, 26 Mass.App.Ct. 279 (1988).  It is the nature of the governmental act, not the care with which it is performed, that determines whether the exception

18

applies. G.L. c. 258, § 10(*b* ). <u>Dalehite v. United States</u>, 346 U.S. at 35, 73 S.Ct. at 967.

Conversely, if there is a readily ascertainable standard by which the action of the government

servant may be measured, whether that standard is written or the product of experience, it is not

within the discretionary function exception. <u>Barton</u>, *supra,* at 979.  <u>Cady v. Plymouth-Carver</u>

<u>Regional School Dist.,</u> 17 Mass.App.Ct. 211, 215 (1983).

Assessing the need for environmental testing, and determining the type of testing to be

performed to protect public health, require the application of judgment, experience and intuition.

Indeed, the very basis for judicial abstention from interference with the rules, decisions, and acts

of permitting authorities is that those are matters within the authorities' broad discretion.  Since

the Board's decision was discretionary, the Town is not liable for negligence.

> **2.    The Town is immune from liability under Section 10(e) because the plaintiff's claim arises from the denial or refusal to issue a permit.**

Again, the gravamen of plaintiffs' complaint is that the Board of Health mandated certain

soil testing requirements before it would grant a septic disposal permit.  G.L. c. 258, § 10(e )

provides that a public employer cannot be held liable for "any claim based upon the issuance,

denial, suspension or revocation or failure or refusal to issue, deny, suspend or revoke any

permit, license, certificate, approval, order or similar authorization."  It is clear then, as matter of

law, that any failure or refusal of the Board to issue a permit is not actionable because it is

subject to the immunity exceptions in G.L. c. 258, §§ 10(*e* ), which bars a lawsuit based on a

failure or refusal by a governmental entity to issue a permit.  *See* <u>David v. Town of</u>

<u>Barnstable</u>, 65 Mass.App.Ct. 1116 (2006).

**C.    ROMANO IS NOT INDIVIDUALLY LIABLE FOR ANY ALLEGED NEGLIGENT ACTS.**

Under the MTCA, G.L. ch. 258 § 2, public employees are not liable for negligent acts performed while acting within the scope of their employment.[7] <u>Pruner v. Clerk of Superior Court in the City of Norfolk</u>, 382 Mass. 309, 313 (1981). The MTCA thus protects a "public employee" from negligence claims arising out of his or her office or employment. <u>Consolo v. George</u>, 835 F.Supp. 49 (D.Mass.1993); <u>Armstrong v. Lamy</u>, 938 F.Supp. 1018, 1042-1043 (D.Mass.,1996). Therefore, any claims of negligence against Romano in his individual capacity must fail.

**D.    THE MUNICIPAL DEFENDANTS ARE NOT LIABLE FOR ANY INTENTIONAL TORTS COMMITTED BY ITS EMPLOYEES.**

To the extent that the Plaintiff asserts any intentional torts by Romano, the Town and the Board are not liable. Under the MTCA, public employers are not liable for intentional torts committed by public employees. <u>Spring v. Geriatric Authority of Holyoke</u>, 394 Mass. 274 (1985). <u>Armstrong v. Lamy</u>, 938 F.Supp. 1018, 1044 (D.Mass.,1996).

WHEREFORE, the Defendants move that their Motion for Summary Judgment be granted and that the Plaintiff's Complaint be dismissed.

The Defendants,
By their attorneys,

**PIERCE, DAVIS & PERRITANO, LLP**

/s/ *Jeffrey M. Sankey*
Jeffrey M. Sankey, BBO #551062
Ten Winthrop Square
Boston, MA 02110
(617) 350-0950

---

[7] The MTCA provides that [n]o public employee or the estate of such public employee shall be liable for any injury or loss of property or personal injury or death caused by his negligent or wrongful act or omission while acting within the scope of his office or employment."

20

## **Certificate of Service**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on March 14, 2006.

_/s/ Jeffrey M. Sankey_____
Jeffrey M. Sankey