FILED
UNITED STATES DISTRICT COURT IN CLERKS OFFICE
DISTRICT OF MASSACHUSETTS

2006 APR 14   A 11: 25

BRISTOL, SS                                DOCKET NUMBER: 05-10876 WGY
                                           U.S. DISTRICT COURT
                                           DISTRICT OF MASS.

)
ALAN DREYFUS,                     )
            Plaintiff             )          **MEMORANDUM IN SUPPORT**
                                  )          **OF PLAINTIFFS OPPOSITION**
vs.                               )          **TO DEFENDANTS MOTION**
                                  )          **FOR SUMMARY JUDGMENT**
JAMES ROMANO, TOWN OF             )
BERKLEY and BOARD OF HEALTH,      )
            Defendants            )
                                  )

        The standard of review pursuant to Federal Rule C. V. P. 56(c) requires, that the court enter judgment as matter of law absent any showing by the non-moving party that there are genuine issues as to any material facts.

        Summary judgment may only be granted sparingly where there are no material facts in dispute. Mass.R.Civ. 56 (c) Community National Bank vs. Dawes, 369 Mass 554 (1976).

        The moving party must establish clearly the complete absence of tribal issue, that the party opposing the issue must respond and document by affidavit specific facts establishing the existence of a material fact in order to defeat the Motion for Summary judgment. Smith vs. Massimiano 414 Mass 81, 82 (1993) The failure by the moving party to establish the absence of a genuine issue of material fact must defeat his Motion. Community National Bank vs. Dawes 369 Mass 550, 559 (1976).

        The plaintiff, Alan Dreyfus in the above captioned matter originally filed in the state court.

        Rule 8 of the Massachusetts Rules of Civil Procedure clearly set forth the requirement to make a claim for relief.

        Rule 8 (a) Claims for Relief. A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim shall contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief to which he deems himself entitled. Relief in the alternative or of several different types may be demanded.

The rule provides that the complaint should be specific enough to provide the defendant with enough information such that the defendant can determine the issues for trial.

State Court Rules differ from Federal Rules in that Rule 8 (a) unlike Federal Rule 8(a) 1, does not contain requirement that the claim set forth "a short and plain statement of the grounds upon which the court's jurisdiction depends"

The plaintiff in the above captioned matter did precisely that in the complaint and in support of said fact draws the courts attention to the defendant's pleadings, which the defendants are bound by.

The plaintiff has adequately alleged violations under Federal Court Law. This case was originally brought by the plaintiff in Bristol County Superior Court based upon that courts jurisdiction of the claims. The matter was removed to the Federal District Court by counsel for the defendants pursuant to MA rules of Civil procedure following the abolishment of G. L. 231 Section14 and under the principles of notice pleading a responding party may move for a clarification of the claims as set forth via a motion for a more definite statement before filing his responsive pleading, instead counsel for the Defendants removed the matter from state court based upon the presence of Federal Complaints in this Complaint.

In this particular case the defendants removed the matter from State Court in so much as the defendants clearly understood that the claim, as originally drafted and filed in State Court raised Federal issues ie (a) possible claims that allege a violation of the Federal Constitution (b) possible claims that alleged a violations of Procedural Due Process and (c) possible claims that allege a violation of Equal Protection.

The plaintiff's claim as originally drafted and today after having requested the minutes of the Board of Health meetings, relevant to the issues presented, that are as of this date still not available, and after having deposed defendant, Romano is more convinced that (a) the defendants conduct had no rational basis (b) that the evidence at trial will clearly establish that the defendant's actions were in fact malicious and in bad faith and predicated upon improper motive (c) that no other homeowner similarly situated has ever been treated so selectively on a totally baseless impermissible consideration and (d) at trial the plaintiff will prove that the actions of the defendants were intentional and purposeful discrimination.

The allegations in the complaint coupled with the deposition testimony have adequately identified causes actionable in Federal Court.

The plaintiff will establish at trial that the defendant's actions were not the result of reasonable error, and that the defendants were plainly incompetent and knowingly violated the law.

The plaintiff will adequately show that the Defendants improperly, impermissibly violated state and town mandated procedures for accepting applications.

In the case at hand no reasonable remedy was available. Creative Environments v. Estabrook 680 FLD 822 832. The Board of Health via the defendant Romano would not accept the application of Dreyfus, until and when he understood additional testing not required by state law or rules on regulations adopted by the Town of Berkley Board of Health.

There is no remedy under State law that would force acceptance of an application by the Board of Health. Pursuant to Chapter 111, Chapter 31 E of the Massachusetts General Laws, an application for a sewage disposal system (septic design) must be acted on within 45 days. Romano et al refused to even accept an application.

When viewed in a light most favorable to the plaintiff the facts necessary to defeat Summary judgment clearly whether the actions by the Board of Health and Romano under the "Color of Law" would be unacceptable or egregious.

The defendant argues or attempts to relate the matter at hand to situations where permits were denied by a governmental body as in Cicarr vs. Ferrazzi 22F. 3d 344, 349 (1st cir.1994) again the plaintiff was denied arbitrarily the opportunity to even file his application, get a hearing and due process from the defendants.

The plaintiff will prove at trial that the town did adopt a policy and condoned the actions of the defendants Board of Health and Chairman Romano to run ruff shot over the matters within the jurisdiction of the Board by not requiring minutes of the Board to be kept and on file as required by statute, by allowing meeting to be conducted by the chairman as Czar without any proper motions and votes as required by law.

The customs and policy adopted by the town of Berkley clearly have been in existence for quite some time and there is a direct link between the custom, policy of the town and the plaintiff's claim.

The plaintiff will set forth and prove at trial that the defendant, Romano did over the course of months as alleged in the complaint did threaten attempt to intimidate and coerce the plaintiff without any rational basis both in public meetings and privately. Many times threatening to have the police intervene in the issues and matters set forth in the complaint. The deposition Testimony of the Plaintiff (Exhibit A) pages 6-8.

The plaintiff will establish and set forth at trial that the allegations set forth in the complaint and the actions of the defendants were not based upon any legitimate exercise or performance of a duty of the defendants acting within the scope of official responsibility and/or there employment.

Specifically the evidence will establish that all of the alleged actions by the defendant's were outside the scope of their employment and/or official responsibility.

Factual Allegations set fourth in defendant's motion are in dispute.

The defendants set forth what appear on its face, to be undisputed facts 1 thru 45 and as stated previously in this memorandum and attested to herein by the plaintiff by affidavit are clearly in dispute.

Factual Allegation # 47:
The defendants attempt to use the statement of the plaintiff to prove a negative. The plaintiff will prove by way of testimony of various experts that regularly practice their trade in Berkley.  Byron Holmes will testify that he has never witnessed any individual or project being subject to the scrutiny of this plaintiff, as will others.

Factual Allegation # 46 and # 45:
The plaintiff will call at trial credible witnesses that will clearly establish the improper motive of the defendants.
The parties are still engaged in discovery however, the plaintiff will provide the names of each individual that will be called to give testimony and provide copies of any documents intended to be offered at trial as evidence.

Factual Allegation # 21 thru # 43:
The statement of facts contained herein, are all presented herein out of context. The plaintiff will set forth and prove at trial that the actions of the defendants as set forth herein are the result of the defendant's misuse of the authority granted pursuant to Massachusetts Statute and as set forth as an example in # 30 the material set forth as fact is conditioned upon the defendant's being able to establish the reasonable nature of the standard and requested action.

WHEREFORE the plaintiff respectfully thanks this honorable court for additional time to file this Memorandum and respectfully request this honorable court to deny the defendants Motion for Summary Judgment.


Brian Corey, Jr. Esquire
1041 Main Road
Westport, MA 02790
508-636-8861
BBO #632973

John P. Long, Esquire
722 Eastern Avenue
Fall River, MA 02723
508-674-4444
BBO #304210

**As a foot note the attorney's for the plaintiff state that they have not received typed copies of the Romano Deposition as of this date but have requested same.


Dated:  April 12, 2006

EXHIBIT A

---

1    this case?

2  A  They were merely there for one meeting. As I told

3     you in the last part of the deposition there that

4     Kevin was going to videotape the meeting because

5     every two weeks that we went to the meeting

6     everything changed, and they would never put

7     anything in writing.

8         So I wanted to once and for all go to a meeting,

9     get told what I needed to do, have it documented.

10    And his wife was taking notes, and she was going to

11    further write down basically what they were saying

12    so that we did have actual paperwork and a videotape

13    and a tape recording of what I was being asked to

14    do.

15        And halfway into the meeting there, Mr. Romano

16    jumped up and said that he never remembered anyone

17    saying anything about videotaping, when everybody in

18    there heard him announce that he was going to

19    videotape.

20        And he called the police, followed Kevin out

21    into the corridor there and wanted to take the tape

22    away from him. And he refused to give it to him.

23    The police showed up and the police took the tape

24    away from him.

25        And at that point he stayed outside. Mr. Romano

---

7

1     returned back into the meeting and he says, You're

2     time is all done. And then I got up and left with

3     his wife outside. And we all basically disbursed.

4  Q  Is that the limit of the knowledge of or involvement

5     of Kevin and Mary Hoar?

6  A  Yes. That was strictly one meeting, you know, maybe

7     an hour's worth of time just so they could see how a

8     meeting was held at the town hall.

9  Q  Now, at the first date of your deposition you

10    indicated to me that you believed that Mary Hoar may

11    still have her written notes, is that your

12    recollection?

13 A  Yes, I did talk to them. They've been -- I guess

14    they have a time-share or something down in Florida.

15    They've been away for weeks, and they just got back

16    last week. And what they were going to try to do

17    between the two of them was to put something down in

18    writing the best they could.

19        He doesn't believe he still has the videotape

20    because it was -- it somehow got broken before it

21    got returned from the police station. And he

22    believes he threw it out, but he's not positive.

23        He's going to look and see if it's on -- you

24    know, if he still has it. She was going to look and

25    see if she still had the written notes. But they

---

8

1     were going to try and put together some kind of a --

2     in writing between the two of them what actually

3     went on in the meeting.

4  Q  My question would be limited to whatever existed on

5     the evening of that meeting, meaning the notes and

6     the videotape. So my understanding is at least as

7     of this point you haven't been able to confirm that

8     either the tape or any notes exist, is that correct?

9  A  Correct.

10        MR. SANKEY:  Would you agree that if --

11        MR. COREY:  We'd stipulate that we'll produce.

12        MR. SANKEY:  If they're found?

13        MR. COREY:  Yes.

14        MR. SANKEY:  Okay. Thank you.

15 Q  Next name on the list was Alfred Gouveia,

16    G-O-U-V-E-I-A. And I think my recollection from the

17    first day of the deposition is that you told me that

18    Mr. Gouveia was also involved in some of the

19    construction activity on your property?

20 A  Correct.

21 Q  Refresh my memory in terms of what Mr. Gouveia did.

22 A  Mr. Gouveia was hired by Byron Holmes to dig the

23    perc test at the very beginning, which I didn't hire

24    him at that point. But Mr. Holmes has a working

25    relationship with Mr. Gouveia. So at the point of